**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JOHN HATZFELD,

                                        Plaintiff,

        v.                                              No. 9:08-CV-283
                                                            (LES/DRH)
THOMAS G. EAGEN, Director, Inmate Grievance          (Member Case)
Program, CORC; JOHN W. BURGE, Superintendent,
Auburn Correctional Facility; NANCY RYERSON,
Nurse Administrator, Auburn Correctional Facility;
ANTHONY GRACEFFO, Former M.D.. Auburn
Correctional Facility; and M.D. PANG KOOI, Auburn
Correctional Facility,

                                        Defendants.
_____

**APPEARANCES:**                          **OF COUNSEL:**

JOHN HATZFELD
Plaintiff _Pro Se_
95-A-0396
Cayuga Correctional Facility
Post Office Box 1186
Moravia, New York  13118

HON. ANDREW M CUOMO                    AARON M. BALDWIN, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

        Plaintiff _pro se_ John Hatzfeld ("Hatzfeld"), an inmate in the custody of the New York

State Department of Correctional Services, brings this action pursuant to 42 U.S.C. § 1983

---

        [1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

alleging that defendants, five current and former DOCS employees, violated his

constitutional rights under the First, Eighth, and Fourteenth Amendments.  Compl. (Dkt.

No. 1)[2] at 1-2, 9.  Presently pending is defendants' motion for summary judgment pursuant

to Fed. R. Civ. P. 56.  Dkt. No. 45.  Hatzfeld opposes the motion.  Dkt. No. 50.  For the

following reasons, it is recommended that defendants' motion be granted.


## I.  Background

The facts are related herein in the light most favorable to Hatzfeld as the non-

moving party.  See subsection II(A) infra.

In April 2000, while incarcerated at Auburn Correctional Facility ("Auburn"),

Hatzfeld was notified that he tested positive for the Hepatitis C[3] Virus ("HCV").  Compl. at

3.  On September 20, 2002, a liver biopsy was performed on Hatzfeld at University

Hospital in Syracuse by Dr. Holtzapple.  Id.  Dr. Holtzapple recommended that Hatzfeld

receive HCV therapy, including "(1) Pegylated interferon therapy combined, (2) Ribavirin

100mg daily, (3) Check hepatitis C viral load in 3 months, and (4) Check genotype."  Id.,

Ex. A.

On December 26, 2002, Dr. Anthony Graceffo ("Graceffo"), a defendant herein who

was then a physician at Auburn, asked Hatzfeld to sign a waiver to participate in either the

Alcohol and Substance Abuse Treatment Program or Residential Substance Abuse

---

[2]All references to docket numbers are to the docket of this case unless otherwise noted.

[3] Hepatitis C is "a chronic viral liver disease that can increase the risk of liver cancer and can lead to inflammation, scarring, and cirrhosis of the liver.  Cirrhosis can ultimately lead to liver failure and death."  Pabon v. Wright, 459 F.3d 241, 246 (2d Cir. 2006).

Treatment Program (collectively "ASAT/RSAT").  Id. at 4.  Hatzfeld, an atheist, refused to participate because the programs included a religious component and his disciplinary records did not show any violations for alcohol or substance abuse.  Id.  Dr. Graceffo refused to provide the recommended treatment.  Id.  After following and exhausting DOCS grievance procedures, Hatzfeld filed a civil rights action regarding the withholding of HCV treatment.  See Hatzfeld v. Goord (Hatzfeld I), No. 9:04-cv-0159.[4]

In October 2004, while Hatzfeld I was pending, Hatzfeld learned that Jeffrey L. Pelkey ("Pelkey"), another inmate, received treatment for HCV from Dr. Graceffo without being forced to participate in ASAT/RSAT.  Compl. at 4.  Pelkey was diagnosed with Hepatitis C in December 2003 and requested HCV therapy.  Id., Dr. Graceffo saw Pelkey on May 13, 2004, and referred Pelkey to a gastroenterologist who recommended that Pelkey receive Pegylated interferon and Ribavirin for six months.  Id.  On September 14, 2004, Dr. Graceffo told Pelkey that he must participate in ASAT/RSAT prior to receiving HCV treatment.  Id.  Pelkey refused to participate in those programs.  Id.  Despite his refusal, Pelkey began receiving the recommended treatment on September 17, 2004.  Id.  Pelkey's disciplinary records show that he tested positive for marijuana twice during his incarceration and that he has a long history of substance abuse.  Id.  To date, Pelkey has not participated in ASAT/RSAT despite receiving treatment.  Id.

Dr. Pang Kooi ("Kooi"), a defendant herein and a physician at Auburn, saw Hatzfeld

---

[4]Hatzfeld I was marked ready for trial in 2007.  Hatzfeld I Dkt. No. 76.  In an order filed November 25, 2009, Hatzfeld I and this action were consolidated for all purposes. Hatzfeld I Dkt. No. 98; Dkt. No. 38.  The motion at issue herein pertains only to the above-captioned action, the Member Case, and not to Hatzfeld I, the Lead Case.  Hatzfeld I has been stayed pending decision on this motion.

on June 30, 2005, and they discussed what Hatzfeld believed to be a change in the requirements for HCV treatment.  Compl. at 5.  Hatzfeld showed Pelkey's affidavit to Dr. Kooi, but Kooi refused to treat Hatzfeld unless he participated in ASAT/RSAT and referred Hatzfeld to Dr. Graceffo.  Id.  Dr. Graceffo saw Hatzfeld on July 21, 2005, and they discussed Pelkey's affidavit and apparent changes in policy.  Id.  Once again, Dr. Graceffo refused to provide Hatzfeld with treatment unless Hatzfeld either enrolled in or completed ASAT/RSAT, regardless of Dr. Graceffo's actions with Pelkey.  Id.

Six days later, on July 27, 2005, Hatzfeld filed Grievance No. 45299-05, to request HCV treatment "without participation in RSAT," arguing that the refusals of Drs. Kooi and Graceffo to provide treatment violated Hatzfeld's constitutional rights.  Compl., Ex. C at 20.[5]  On August 1, Hatzfeld's grievance was denied.  Id. at 23.  An Investigative Report authored by Auburn Nurse Administrator Nancy Ryerson ("Ryerson"), a defendant herein, stated that "RSAT is a requirement to receiving" treatment and that Health Insurance Portability and Accountability Act ("HIPPA") regulations prevented the disclosure of another inmate's medical history.  Defs.' Mem. of Law, Ex. A (Dkt. No. 45-3) at 7.  The IGRC response restated Ryerson's message .  Id. at 24.  Hatzfeld appealed to Auburn Superintendent John W. Burge ("Burge"), a defendant herein, on August 22.  Compl., Ex. C  at 24.  Burge denied the appeal on August 24, stating that "guidelines state participation in a workbook ASAT program is a requirement" for treatment and that "the

_____

[5]"The IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] ... within four working days of receipt of the superintendent's written response." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir.2004) (internal citations omitted).

completion of a workbook is not considered completion of RSAT." Id. at 25.  Hatzfeld immediately appealed Burge's decision to CORC. Id. at 25-26.  CORC upheld Burge's decision, and advised Hatzfeld to follow staff direction, and participate in the ASAT workbook program," stating that DOCS was following Hepatitis C Primary Practice Guidelines. Id. at 27.  This action followed.


## II.  Discussion

Hatzfeld asserts three causes of action against each defendant.  Hatzfeld alleges that he was (1) denied adequate medical care and potentially life-saving treatment for refusing to participate in religious-based alcohol and substance abuse treatment programs in violation of the First Amendment; (2) subjected to cruel and unusual punishment through the denial of adequate medical care and treatment for a potentially life-threatening illness in violation of the Eighth Amendment; and (3) discriminated against as a specific group or class of people because he was held to a higher standard of approval than others in like circumstances in violation of the Fourteenth Amendment.  Compl. at 9.   These allegations are premised on Hatzfeld's renewed request for treatment on June 30, 2005. Compl. at 5-9.  He seeks compensatory and punitive damages. Id. at 10.

Defendants contend that (1) defendants Thomas Eagen ("Eagen"), Burge, and Ryerson argue that they were not personally involved in any alleged constitutional violations; (2) the ASAT/RSAT requirements do not violate Hatzfeld's First Amendment rights; (3) the program's requirements did not violate Hatzfeld's rights under the Equal Protection Clause of the Fourteenth Amendment; (4) Hatzfeld did not suffer from a serious

medical condition, and even if he did, none of the defendants acted with deliberate indifference with regard to such condition; (5) they are entitled to qualified immunity against all claims for monetary damages; and (6) Hatzfeld has experienced no compensable damages and cannot sustain his burden of proving an entitlement to punitive damages such that only a claim for nominal damages could be warranted.  Defs. Mem. of Law (Dkt. No. 45-20.)


## A.  Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Id. at 586.  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a

motion for summary judgment.  <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219,

1223-24 (2d Cir. 1994); <u>Graham v. Lewinski</u>, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks judgment against a *pro se* litigant, a court must afford

the non-moving party special solicitude.  <u>See</u> <u>Triestman v. Fed. Bureau of Prisons</u>, 470

F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a *pro se* litigant is entitled to
> "special solicitude,"; that a *pro se* litigant's submissions must be construed
> "liberally,"; and that such submission must be read to raise the strongest
> arguments that they "suggest[.]"   At the same time, our cases have also
> indicated that we cannot read into *pro se* submissions claims that are not
> "consistent" with the *pro se* litigant's allegations, or arguments that the
> submissions themselves do not "suggest,"; that we should not "excuse frivolous
> or vexatious filings by *pro se* litigants," and that *pro se* status "does not exempt
> a party from compliance with relevant rules of procedural and substantive law."

<u>Id.</u> (internal citations and footnote omitted); <u>see also</u> <u>Sealed Plaintiff v. Sealed Defendant</u>

<u>#1</u>, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have

reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to

construe his pleadings liberally.") (citations omitted).

## B.  Eleventh Amendment

The Eleventh Amendment prohibits suits against a state in federal court unless the

state consents or waives its immunity. <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465

U.S. 89, 101 (1984). A suit against a state official in his or her official capacity is a suit

against the entity that employs the official. <u>Mathie v. Fries</u>, 121 F.3d 808, 818 (2d Cir.

1997). The State has not consented to suit or waived its immunity here. § 1983 claims do

not abrogate the Eleventh Amendment immunity of the states. See <u>Daisernia v. New York</u>,

582 F. Supp. 792, 796 (S.D.N.Y. 1984).  Thus, a suit that seeks monetary damages from an official in his or her official capacity is barred even though asserted against the individual.  Kentucky v. Graham, 473 U.S. 159, 169 (1985).

Here, all defendants are named both in their individual and official capacities. Compl. at 7-8.  Defendants note that "[a]ny claim against the defendants [in Hatzfeld I] for money damages in their official capacities [was] barred by the Eleventh Amendment." Defs. Mem. of Law at 30 n.3.  In this case, however, the defendants have not moved for summary judgment on Eleventh Amendment sovereign immunity grounds.  Further, only two of the defendants in Hatzfeld I, Burge and Dr. Graceffo, are named as defendants in this action.  To the extent that defendants neglected to move explicitly to dismiss on sovereign immunity grounds, it is recommended that the Court *sua sponte* dismiss any claims against defendants for money damages in their official capacities.  See 28 U.S.C. § 1915(e)(2)(B)(iii).

## C.  Personal Involvement

Defendants Eagen, Burge, and Ryerson argue that they were not personally involved in any alleged constitutional violations.  Defs. Mem. of Law at 2-7.  Personal involvement is an essential prerequisite for section 1983 liability.  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  A section 1983 defendant, however, cannot be liable "merely because he held a supervisory position of authority."  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  Supervisory personnel may be considered "personally involved" only if the defendant: (1) directly participated in the alleged constitutional violation; (2) failed to

8

remedy that violation after learning of it through a report or appeal; (3) created, or allowed

to continue, a policy or custom under which the violation occurred; (4) had been grossly

negligent in managing subordinates who caused the violation; or (5) exhibited deliberate

indifference to the rights of inmates by failing to act on information indicating that violation

was occurring.  Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v.

Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).[6]


### 1.  Eagen

Hatzfeld alleges that Eagen, IGP Director during the time in question, failed to

remedy CORC's denial of Hatzfeld's grievance by denying Hatzfeld's appeal and that

Eagen was "grossly negligent" in supervising CORC because Eagen had allowed CORC

to deny Hatzfeld's grievance.  Compl. at 5, 7; Pl. Mem. of Law (Dkt. 50) at 3.  Eagen

argues that as a IGP Director he served as the committee's "custodian of records," that he

was not a voting member of CORC, and that he is responsible only for "administrative

functions," and that he "would have merely signed the dispositions of CORC indicating that

such is the response of the body."  Defs. Mem. of Law at 3; see also Rule 7.1 Statement

¶¶ 23-24; Bellamy Decl. ¶¶ 4-6.

On these facts, it cannot be shown that Eagen was personally involved in any

alleged constitutional violations.  Under DOCS regulations, the IGP Director "is not a

voting member of the CORC" but is "responsible for the administrative function of the

---

[6] The Supreme Court's decision in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), arguably casts in doubt the continued viability of some of the categories set forth in Colon. See Sash v. United States, 674 F. Supp. 2d 531 (S.D.N.Y. 2009).  Here, the Court will assume arguendo that all of the Colon categories apply.

IGP," and "as the commissioner's designee, shall ensure implementation of CORC

decisions."  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(d)(2)(iii).  An IGP Director is not

personally involved merely because he or she signed CORC's administrative decisions.

See, e.g., Jones v. Goord, No. 9:05-cv-1438 (DNH/RFT), 2009 WL 790978, at *3

(N.D.N.Y. Mar. 3, 2009) (Treece, M. J.) (finding Eagen not personally involved just

because he signed CORC determinations); H'Shaka v. Drown, No. 9:03-cv-937

(LEK/RFT), 2007 WL 1017275, at *11 (N.D.N.Y. Mar. 30, 2007) (same); see also Persad

v. Savage, No. 02-cv-336S(F), 2004 WL 1570286, at *7 (W.D.N.Y. May 25, 2004)

(Foschio, M. J.) ("mere allegation that [an IGP Director] affirmed the decisions [CORC], as

evidenced by her signature on the official record of the CORC decision" is insufficient to

defeat a motion for summary judgment").

Other than restating the allegations in the complaint and submitting the definition of

"Director" from the American Heritage Dictionary, Hatzfeld has not disputed Eagen's

argument.  Pl. Mem. of Law at 2-3.  Hatzfeld has pointed to no additional evidence that

Eagen participated in any alleged unconstitutional act.  Eagen's only alleged personal

involvement is based upon his signing of CORC's administrative decisions.  Conclusory

allegations are insufficient to defeat a motion for summary judgment.  Flaherty v. Coughlin,

713 F.2d 10, 13 (2d Cir. 1983).  As such, Eagen was not personally involved in any

alleged constitutional violations, and is is recommended that defendants' motion as to

Eagen on this ground be granted.

**2. Burge**

Hatzfeld contends that Burge, Acting Auburn Superintendent at the time in question, violated his constitutional rights by denying the grievance.  Compl. at 5, 7; Pl. Mem. of Law at 4.  Merely denying a prisoner's grievance "is insufficient to establish personal involvement."  Mercer v. Benson, No. 08-cv-537 (DNH/DRH), 2009 WL 3111684, at *4 (N.D.N.Y. Aug. 14, 2009) (Homer, M. J.) (citing Joyner v. Greiner, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002).  Here, the claim against Burge is premised on his denial of Hatzfeld's grievance at the superintendent level.  Pl. Mem. of Law. at 4.  Although Hatzfeld's complaint also alleges grossly negligent supervision, he has not raised any issues of material fact on that issue.  As such, defendants' motion as to Burge on this ground should be granted.


**3. Ryerson**

Hatzfeld argues that Ryerson, Acting Nurse Administrator at Auburn's Medical Department, is also liable because the denial of the grievance was "based solely" on an Investigative Report that Ryerson prepared and filed.  Compl. at 5, 7; Pl. Mem. of Law at 5.  The report stated that "RSAT is a requirement of receiving Hepatitis C Treatment" and that HIPPA regulations prevent discussing another inmate's medical information.  Grievance Pack at 7.

There can be no personal involvement when defendants "are not supervisory officials . . . in any sense factually or legally."  Brody v. McMahon, 684 F. Supp. 354, 356 (N.D.N.Y 1988).  Supervisory capacity involves "hiring, firing, or disciplinary power over

11

any supervisory staff or personnel of the correctional facilities . . . [or] direct power to control or direct the customs and policies of the facilities" and one who acts in an advisory capacity by investigating grievances "cannot be held accountable for any failure . . . to remedy an constitutional violations [she] may have learned about." Van Pelt v. Finn, No. 98 Civ. 2977 (MBM), 1993 WL 465297, at *7 (S.D.N.Y. Nov. 12, 1993).    In preparing the Investigative Report, Ryerson was acting in an advisory capacity and not supervisory capacity.  Her report merely informed IGRC's decision to deny Hatzfeld's grievance. See Defs. Mem. of Law, Ex. A at 7, 24.  Hatzfeld has not raised any issues of material of fact as to whether Ryerson developed the policy or that she directed any subordinates to follow that policy.  There are no facts showing that she supervised any of the other defendants. Therefore, Ryerson was not personally involved in the alleged constitutional violations and it is recommended that defendants' motion as to her be granted.


## D.  First Amendment

Hatzfeld refused to participate in ASAT/RSAT on First Amendment grounds. Compl. at 6.  He is an atheist, and he submits that ASAT/RSAT is "faith-based." Id. Because participation in ASAT/RSAT was a prerequisite to receiving HCV treatment,[7] Hatzfeld did not receive treatment until October 2005 after this Court issued a preliminary injunction ordering DOCS to provide him with treatment.[8]  Thus, he argues that

---

[7] On October 13, 2005, DOCS changed the Hepatitis C Primary Guideline by removing the ASAT prerequisite "if treatment is otherwise medically indicated."  Pl. Mem. of Law (Dkt. 50-1) Ex. 4.

[8] See Hatzfeld I Dkt. No. 57 at 11.

conditioning hepatitis treatment on participation in ASAT/RSAT violated his First Amendment rights.  Id. at 9.

The First Amendment, made applicable to states by the Fourteenth Amendment, states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. Const. amend. I.  It embraces "two fundamental concepts: 'freedom to believe and freedom to act' on one's beliefs."  Decker v. Hogan, No. 9:09-cv-0239 (TJM/GJD), 2009 U.S. Dist. LEXIS 89048, at *7 (N.D.N.Y. Sept. 28, 2009) (quoting Cantwell v. Connecticut, 310 U.S. 296, 303 (1940)).  "[A]t a minimum, the government may not coerce anyone to participate in religion or its exercise." Lee v. Weisman, 505 U.S. 577, 587 (1992); see also Alexander v. Schenk, 118 F. Supp. 2d 298, 301 (N.D.N.Y. 2000).  Atheists are protected by the First Amendment.  Decker, 2009 U.S. Dist. LEXIS 89048 at *9; McChesney v. Hogan, No. 9:08-cv-1186 (NAM/DEP), 2008 U.S. Dist. LEXIS 110140, at *13 (N.D.N.Y. Dec. 23, 2008) (Peebles, M. J.); see also Wallace v. Jaffree, 472 U.S. 38, 53 (1985) ("the individual freedom of conscience protected by the First Amendment embraces the right to select any religious faith or none at all").

It has "long been understood" that prisoners "retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause."  Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003).  A prisoner's free exercise rights, however, "must be balanced against the interests of prison officials engaged in the complex duties of administering the penal system."  Parks v. Smith, No. 9:08-cv-0586 (TJM/GHL), 2009 U.S. Dist. LEXIS 87210, at *20-21 (N.D.N.Y. Aug. 17, 2009) (Lowe, M. J.) (citing Ford, 352 F.3d at 588).  Thus, a "generally applicable policy" does not violate a prisoner's free

13

exercise of religion under the First Amendment "if that policy 'is reasonably related to legitimate penological interests.'"  Redd v. Wright, 597 F.3d 532, 536 (2d Cir. 2010) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987)).

The defendants argue that in October 2002, two months before Hatzfeld was first advised to participate in ASAT/RSAT, DOCS had already removed all religious content from those programs.  Bradford Decl. (Dkt. No. 45-19) ¶ 8; see also ASAT Manual (Dkt. No. 45-11) Ex. H.  The ASAT Workbooks contain nothing indicating a preference for a specific religion or any religion at all.  See ASAT Workbooks (Dkt. Nos. 45-12, 45-13, 45-14) Exs. I, J, K. In response, Hatzfeld alleges that the ASAT Workbooks contain "no date and/or revision number to reference when the material became available," leaving to "what or which update these Exhibits represent . . . to speculation."  Pl. Mem. of Law at 24.  Hatzfeld, however, has presented no evidence to show that there is a genuine issue of fact on when the revisions occurred.  Although non-movants who are *pro se* litigants are to be given "special solicitude," Triestman, 470 F.3d at 477, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

Other than a January 2003 article from a DOCS newsletter, stating that the "ASAT program still embraces the concept of spirituality," Hatzfeld has presented no other evidence that would raise a genuine issue as to whether ASAT still contains religious components.  See Pl. Ex. H (Dkt. No. 32) at 10.  References to spirituality alone, however, does not equate to religion "such that any reference to spirituality . . . runs afoul of the First Amendment."  Decker, 2009 U.S. Dist. LEXIS 89048 at *13-14 (quoting Boyd v. Coughlin,

14

914 F. Supp. 828, 833 (N.D.N.Y. 1996)); see also Pratt v. Hogan, No. 6:08-cv-1003 (DNH/DEP), 2009 WL 87587, at *2 (N.D.N.Y. Jan. 9, 2009).

Moreover, the Second Circuit has held that "as long as a secular alternative . . . is provided, it does not violate the Establishment Clause to 'include a noncoercive use of'" an alcohol or substance abuse treatment program that contains religious components. See Miner v. Goord, 354 Fed.App'x 489, 492 (2d Cir. Nov. 25, 2009) (citing Griffin v. Coughlin, 88 N.Y.2d 674, 677 (1996)); see also Sumpter v. Skiff, No. 05-cv-868, 2008 WL 4518996, at *10 (N.D.N.Y. Sept. 30, 2008) (finding that "there is no basis to conclude that . . . required participation in the RSAT program would violate [a plaintiff's] religiously held beliefs" when an alternative secular curriculum were available "to any inmate raising religious objections to the content of other treatment regimens").

By the time that Hatzfeld was told that ASAT/RSAT was a prerequisite to receiving HCV treatment, DOCS had already designed a secular alternative to the traditional programs. The Cognitive Behavior Therapy Program ("CBT") (also known as Cognitive ASAT) is available "for those inmates whose religious beliefs conflict with the treatment philosophy" of the regular programs, which has been available since March 2002.[9] Pl.

─────────────────────

[9] Given that Hatzfeld submitted the CBT article as his own exhibit, he was necessarily aware of a secular alternative. There is no indication anywhere in the record, however, that any of the defendants or anyone else at DOCS told Hatzfeld to petition for CBT or that DOCS had already removed religious content from ASAT/RSAT. The last page of the ASAT Manual includes a notification of CBT, and that this notification is also included as one of Hatzfeld's exhibits. See ASAT Manual at 87; Pl. Mem. of Law Ex. 3. However, an explicit and direct notification to Hatzfeld that he could petition for CBT or that ASAT/RSAT had already removed any religious materials could have resolved the matter without the necessity of litigation. Moreover, the failure to provide an explicit and direct notification to hatzfeld that he could petition for CBT or that ASAT/RSAT had already removed any religious materials may demonstrate a deliberate indifference on the part of defendants to Hatzfeld's serious medical needs. See Section II-F infra.

15

Mem. of Law (Dkt. No. 50-1) Ex. 3; <u>see also</u> Pl. Ex. H.  Thus, Hatzfeld's First Amendment

claim fails as a matter of law because there is no basis to conclude that Hatzfeld's

required participation in the program would violate his religiously held beliefs.

Accordingly, it is recommended that defendants' motion be granted as to Hatzfeld's

First Amendment claim.


### E.  Equal Protection

Hatzfeld also alleges that he "is being discriminated against as a specific group or

class of people" in violation of the Fourteenth Amendment's Equal Protection Clause

because DOCS holds him to a "higher standard of approval[] to gain medical

care/treatment" than others in similar circumstances.  Compl. at 9.

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment

under the law.  Essential to that protection is the guarantee that similarly situated persons

be treated equally. <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).

The level of scrutiny used to "ensure that classifications comply with this guarantee differs

according to the nature of the classification."  <u>Travis v. N.Y. State Div. of Parole</u>, No. 96-

cv-0759, 1998 U.S. Dist. LEXIS 23417, at *11 (N.D.N.Y Aug. 26, 1998) (Sharpe, M. J.).

Strict scrutiny is used when "the classification drawn 'impermissibly . . . operates to the

peculiar disadvantage of a suspect class.'"  <u>Disabled Am. Veterans v. U.S. Dep't of</u>

<u>Veterans Affairs</u>, 962 F.2d 136, 141 (2d Cir. 1992) (citing <u>Mass. Bd. of Ret. v. Murgia</u>, 427

U.S. 307 (1976) (footnotes omitted)).  Suspect classes are those based on "race,

alienage, or national origin, or those which discriminate against a group saddled political

powerlessness as to command extraordinary protection from the majoritarian political

16

process." Id.  To survive strict scrutiny, the "State must demonstrate a compelling

governmental interest and show that the law is the least restrictive means of furthering its

interest." City of Boerne v. Flores, 521 U.S. 507, 534 (1997).  Quasi-suspect

classifications, like those based on gender or illegitimacy, receive heightened scrutiny, and

such classifications are impermissible unless they are "substantially related to a

sufficiently important governmental interest." City of Cleburne, 473 U.S. at 441. Any other

classifications "need only be rationally related to a legitimate governmental purpose."

Travis, 1998 U.S. Dist. LEXIS at *11.

Construing his Complaint liberally, it appears that Hatzfeld argues that this

discrimination occurred because of his "religion" and "handicap."  Compl. at 6 (those

words are underlined). As discussed in section II(D) supra, there is no merit to Hatzfeld's

claim that ASAT/RSAT infringes upon his First Amendment rights as an atheist.  Further,

Hatzfeld has not stated what his particular handicap might be, let alone alleged any

discrimination based on a handicap.  Thus, Hatzfeld has not alleged any facts "plausibly

suggesting that "[he] was intentionally treated differently from others similarly situated as a

result of intentional or purposeful discrimination directed at an identifiable or suspect

class." O'Neil v. Bebee, No. 5:09-cv-1133 (GTS/DEP), 2010 U.S. Dist. LEXIS 11639, at

*29 (N.D.N.Y. Feb. 10, 2010) (emphasis in original).

Hatzfeld also advances a "class of one" claim.  Pl. Mem. of Law at 12.  Hatzfeld

argues that he was treated differently from Pelkey, who received HCV treatment despite

Pelkey's refusal to participate in ASAT/RSAT even though Pelkey had a history of

substance abuse.  Id. at 11-12; see also Compl. at 4-5.  An Equal Protection claim "may

be brought by a 'class of one' 'where the plaintiff alleges that [he] has been intentionally

17

treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Tatta v. Wright, 616 F. Supp. 2d 308, 319 (N.D.N.Y 2007) (citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564; Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005)).

In Equal Protection claims, prison administrators making classifications "'need only demonstrate a rational basis for their distinction,' . . .or that [the classifications] are 'reasonably related to legitimate penological interests.'"  Doe v. Goord, No. 04 Civ. 0570, 2005 U.S. Dist. LEXIS 28850 (GBD) (AJP), at *61 (S.D.N.Y. Nov. 22, 2005) (Peck, M.J.) (quoting Isaraphanich v. Coughlin, 716 F. Supp. 119, 121 (S.D.N.Y. 1989)).  The "burden is upon the challenging party to negative 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  Doe, 2005 U.S. Dist. LEXIS 28850 at *59 (quoting Bd. of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 367 (2001) (internal citations omitted)).

A considerable portion of defendants' brief discusses the rational basis for different treatments between those with hepatitis and those who have Acquired Immune Deficiency Syndrome ("AIDS").  See Defs. Mem. of Law at 20-24.  Although that was an issue in Hatzfeld I, the allegations here concern the alleged disparate treatment between Hatzfeld and Pelkey and not between those with HCV and AIDS.  See Compl. at 4-5, 9, Ex. B; see also Pl. Mem. of Law at 12.  Regardless, the record is devoid of any indication that Hatzfeld was treated differently due to any discriminatory animus on the part of any of the defendants.  Because Hatzfeld has failed to plead an "inescapable crux of [an] Equal Protection claim, it is unnecessary to determine whether any rational basis existed for a possible disparity in treatment."  Lighthall v. Vadlamudi, No. 9:04-CV-0721 (NAM/RFT),

2006 U.S. Dist. LEXIS 74734, at * 52 (N.D.N.Y. Feb. 6, 2006) (Treece, M.J.).

As such, it is recommended that defendants' motion be granted as to Hatzfeld's Fourteenth Amendment claim.


### F.  Eighth Amendment

Hatzfeld also argues that defendants violated his Eighth Amendment rights by denying him hepatitis treatment.  Compl. at 9.  The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  This prohibition extends to the provision of medical care.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  The test for a section 1983 claim is twofold.  First, the prisoner must show that the condition to which he was exposed was sufficiently serious.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Id. at 844.


### 1.  Serious Medical Need

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)).  Although there is no distinct litmus test, a

serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).  An inmate need not "demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do[es] [this Court] require a showing that his or her condition will degenerate into a life threatening one."  Id.  at 163.  This "'component of an Eight Amendment claim is . . . [necessarily] contextual' and fact-specific."  Smith, 316 F.3d at 185 (quoting Hudson, 503 U.S. at 8).  Thus, the "serious medical need inquiry must be tailored to the specific circumstances of each case."  Id.

It is well-established that Hepatitis C is a serious medical condition.  See, e.g., Motta v. Wright, No. 9:06-cv-1047, 2009 WL 1437589, at *15 (N.D.N.Y. May 20, 2009) ("No one disputes that HCV is a 'serious medical condition.'"); Scheckells v. Goord, 423 F. Supp. 2d 342, 347 (S.D.N.Y. 2006) ("failure to treat . . . HCV clearly satisfies the objective element of the deliberate indifference standard"); Pabon v. Wright, No. 99 Civ. 2196 (WHP), 2004 WL 628784, at *5 (S.D.N.Y. Mar. 29, 2004) ("as it is undisputed that plaintiffs each carried Hepatitis C and that this action arises from defendants' treatment of that virus, plaintiffs have demonstrated a sufficiently serious medical need"); Johnson v. Wright, 234 F. Supp. 2d 352, 360 (S.D.N.Y. 2002) (Gorenstein, M.J.) (holding that Hepatitis C constitutes an objectively serious condition).

Defendants argue that this case should be treated as one of "delayed or interrupted treatment," rather than one of "denied treatment."  Defs. Mem. of Law at 8.  In cases

where the "the plaintiff is receiving ongoing treatment, and the issue is an unreasonable delay or interruption of the treatment, then the 'seriousness' inquiry focuses on the challenged delay itself, rather than the underlying condition alone." Motta, 2009 WL 1437589 at *14.

Relying on Smith, defendants argue that the Court's inquiry on Hatzfeld's serious medical need should focus on the alleged three-month delay from June 30 to September 23, 2005 between Hatzfeld's renewed request for treatment and the commencement of treatment. Defs. Mem. of Law at 8. The plaintiff's claim in Smith was premised on an interruption in treatment. There, an HIV-positive prisoner challenged the "failure to provide him with prescription HIV medication during a seven-day period in October 1998 and a five-day period in January 2009," which made the case "conceptually different from the ordinary denial of medical care case, because [the Smith] claim is based on short-term interruptions in the otherwise adequate treatment" that the prisoner was receiving.[10] Id. at 185. Thus, in Smith, it was "appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation" was sufficiently serious. Id. (emphasis in original).

Defendants' attempt to re-characterize the issue in this case is misguided. Here, Hatzfeld's Eighth Amendment claim arises from the *denial*–and not a delay or interruption–of his renewed request for treatment in June 2005. See Compl. at 9 ("Plaintiff is being subjected to cruel and unusual punishment through the *denial* of adequate medical care/treatment for a potentially life threatening disease.") (emphasis added).

_____

[10] Other cases cited by defendants to support this proposition are all either delayed treatment or interrupted treatment cases.

Further, unlike the plaintiffs in the delayed or interrupted treatment cases, Hatzfeld was not regularly receiving his treatment for his underlying condition.  He was denied treatment in 2002 and once again in 2005.  But for the preliminary injunction in September 2005, or the policy change one month later, Hatzfeld might never have received treatment.  Therefore, it is inappropriate to treat this case as one of delayed or interrupted treatment.

Even if this case were one of delayed treatment, there remains an issue of fact as to the seriousness of  Hatzfeld's medical condition.  See Chambers v. Wright, No. 05 Civ. 9915 (WHP), 2009 U.S. Dist. LEXIS 37424, at *10 (S.D.N.Y. Mar. 17, 2009) (finding a material issue of fact whether a delay in plaintiff's third HCV treatment was "objectively serious").  D. Graceffo states that Hatzfeld "has achieved a 'sustained viral response' and is essentially 'cured.'"  Graceffo Decl. (Dkt. No. 45-17) ¶ 25; see also Wright Decl. (Dkt. No. 45-18) ¶ 37; Pl. Med. R. (Dkt. No. 45-4.).  However, Hatzfeld's last liver biopsy was in 2002.  Defs.' Rule 7.1 Statement ¶ 96.  That biopsy indicated that Hatzfeld had stage three fibrosis of the liver.  Pl.'s Med. R.  Stage three indicates bridging fibrosis, which is "a type of scarring that starts to develop into cirrhosis."  Pl. Reply to Defs.' Mot. for Summ. J. (Dkt. No. 50-1) Ex. 2 at 5.  Since Hatzfeld's last biopsy was over eight years ago, there is a question of fact as to the extent of liver damage.

Accordingly, Hatzfeld has raised a question of fact as to the objective prong of the deliberate indifference standard and defendants' motion on this ground should be denied.

## 2.  Deliberate Indifference

Deliberate indifference requires the prisoner "to prove that the prison official knew

of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. To be "sufficiently culpable," the defendant must "know[] of and disregard[] an excessive risk to inmate health and safety; the [defendant] must both be aware of facts from which the interference could be drawn that a substantial risk of harm exists, and he must also draw that reference." Farmer, 511 U.S. at 837. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976).

"Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

Because defendants "have cited policy as the reason for their actions . . . , the question before [the Court] is whether following the policy resulted in deliberate indifference to [Hatzfeld's] medical needs." Brock, 315 F.3d at 166. "If so, summary judgment may not be granted . . . since unconstitutional acts would . . . have occurred as a result of [the] policy." Id. As such, the "operative question" here "is not whether the Guideline's substance abuse policy is generally justifiable, but whether a jury could find that the application of the policy in plaintiff's case could have amounted to deliberate indifference to plaintiff's medical needs." Johnson v. Wright, 412 F.3d 398, 404 (2d Cir.

23

2005).

The Second Circuit has found that deliberate indifference may lie where prison officials ignore a physician's recommendation to provide hepatitis treatment even where prison officials do so in accordance with policy. See Johnson, 412 F.3d at 404. Here, defendants relied on DOCS' Guideline requiring enrollment in ASAT/RSAT before receiving HCV treatment when initially denying Hatzfeld HCV treatment. See Defs. Mem. of Law at 11-13; Defs. Rule 7.1 Statement ¶¶ 8, 15, 1668, 72-80; Wright Decl. ¶¶ 23-29; Graceffo Decl. ¶¶ 12-17. The denial of Hatzfeld's renewed request for treatment was also premised on his refusal to enroll in ASAT/RSAT. See Grievance Pack (Dkt. 45-3) at 2-3, 7, 22. Dr. Holtzapple recommended pegylated interferon therapy combined with ribavirin on December 18, 2002. Pl. Med. R.; Compl. Ex. A. Thus, a reasonable jury could find that conditioning treatment on participation in ASAT/RSAT were acts of deliberate indifference. See Chambers, 2009 U.S. Dist. LEXIS 37424 at *13-14 (holding that a jury must decide on whether conditioning HCV treatment on participation in RSAT is "reckless" and not "medically justifiable").

Moreover, a legitimate claim of deliberate indifference may also lie where a plaintiff shows that another inmate had received hepatitis treatment without participating in a substance abuse program. See, e.g., Conti v. Goord, 59 F. App'x 434, 436 (2d Cir. Mar. 14, 2003) (finding that a plaintiff may establish deliberate indifference where he presented affidavits from inmates who were given hepatitis treatment without being required to participate in ASAT, raising the possibility that defendants "have applied their policy selectively, and adversely" to plaintiff). In this case, Hatzfeld has presented an affidavit from Pelkey, another inmate, stating that despite his history of substance abuse, he

received hepatitis treatment even though he did not participate in ASAT/RSAT.  See

Compl. Ex. B.  Therefore, a reasonable jury could conclude that adherence to the policy in

this case amounted to deliberate indifference.

Finally, defendants' failure explicitly to notify Hatzfeld that all religious materials had

been removed from ASAT/RSAT or that a secular alternative was available could be

viewed as deliberate indifference to Hatzfeld's serious medical needs.  Indeed, Hatzfeld

might have participated in the secular alternative had he been given the opportunity to do

so.  Although Hatzfeld submitted an article discussing the secular alternative as an exhibit

(see Pl. Ex. H), it is unclear when Hatzfeld first learned of the alternative.  As such, a

reasonable jury could find that defendants showed deliberate indifference to Hatzfeld's

serious medical needs.

Accordingly, it is recommended that defendants' motion as to Hatzfeld's Eighth

Amendment claims be denied on this ground.


**G.  Qualified Immunity**

Even if Hatzfeld's constitutional claims are substantiated, defendants[11] claim that

they are entitled to qualified immunity.  Qualified immunity generally protects governmental

officials from civil liability "insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known."  Harlow

v. Fizgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30

———————————

[11]It is recommended above that judgment be granted to Eagen, Burge, and Ryerson
for lack of personal involvement in any alleged constitutional violations.  See subsection
II(B)supra.  Therefore, this portion of the Report-Recommendation will focus only on Drs.
Graceffo and Kooi.

(N.D.N.Y. 2002), aff'd, 80 F. App'x 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991) (citing Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. A prisoner's right to adequate medical treatment is a clearly established constitutional right. See, e.g., Burgess v. Goord, No. 98 Civ. 2077 (SAS), 1999 U.S. Dist. LEXIS 611, at *17 (S.D.N.Y. Jan. 26, 1999) ("It is clearly established that inadequate medical care can give rise to an Eight Amendment constitutional violation where prison officials are deliberately indifferent to an inmate's serious medical needs.") (internal citations omitted).

As discussed supra, a reasonable jury could find that defendants violated Hatzfeld's Eighth Amendment rights. Nevertheless, defendants may still be entitled to qualified immunity if it was objectively reasonable for them to believe that their acts did not violate Hatzfeld's constitutional rights. See Kaminsky, 929 F.2d at 925 (citing Magnotti, 918 F.2d at 367). Drs. Graceffo and Kooi relied on DOCS' Guideline when they refused to provide treatment to Hatzfeld. See Defs. Mem. of Law at 11-13; Defs. Rule 7.1 Statement ¶¶ 8, 15, 1668, 72-80; Wright Decl. ¶¶ 23-29; Graceffo Decl. ¶¶ 12-17; Grievance Pack at 2-3,

7, 22.  The Guideline is constantly developed and revised based upon information from a number of independent medical sources.  See Rule. 7.1 Statement ¶ 46.  DOCS relied on those independent sources when it established the ASAT/RSAT prerequisite.  See Wright Decl. ¶ 24; NIH Consensus Statement (Dkt. No. 45-7); CDC Morbidity and Mortality Weekly Report (Dkt. No. 45-8.)   The medical community recognized that alcohol or drug use could prevent the successful completion of hepatitis treatment, and DOCS promulgated rules in accordance with recommendation from the medical community.  Thus, although the necessity of the ASAT/RSAT has been called into question, it was objectively reasonable for Drs. Graceffo and Kooi to believe that conditioning Hatzfeld's treatment on his participation those programs did not violate the law.  Hatzfeld has not raised any issues of material fact on this question.  Rather, he merely restates allegations of constitutional violations.  Pl. Mem. of Law at 13-14.

Accordingly, it is recommended that defendants' motion as to Drs. Graceffo and Kooi on this ground be granted.[12]


### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 45) be **GRANTED** and that judgement be entered in favor of all defendants on all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen

---

[12]In light of the recommendations herein, defendants' argument regarding damages need not be addressed.

(14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R.

72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT**

**WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v.

Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Secretary of Health and Human

Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated:  December 10, 2010

_____

David R. Homer
U.S. Magistrate Judge